UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| DIANE MCBRIDE, | § | CASE NO. 05-91224-H4-7 |
| DEBTOR | § | |

MEMORANDUM OPINION
ON TRUSTEE'S OBJECTION TO EXEMPTIONS

## I. INTRODUCTION

This Memorandum Opinion addresses the issue of whether after-tax contributions to an ERISA-qualified savings plan constitute property of the bankruptcy estate.[1] The Debtor claimed her savings plan as exempt under Texas state law. [Docket No. 1, Schedule C.] The Trustee objected to the exemption of the Debtor's after-tax contributions to the savings plan. [Docket No. 9.] For the reasons set forth below, this Court holds that the Debtor's after-tax contributions are <u>excluded</u> from the bankruptcy estate. This Opinion sets forth how the Court arrived at its decision.

On February 21, 2006 and July 26, 2006, this Court held hearings in the above referenced case. The Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52 as incorporated into Federal Rule of Bankruptcy Procedure 7052. To the extent that any finding of fact is construed to be a conclusion of law, it is adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is adopted as such. The Court

---

[1] ERISA refers to the Employee Retirement Income Security Program, formerly the Employee Retirement and Income Security Act of 1974. 29 U.S.C. § 1001 *et seq.*

reserves the right to make any additional findings and conclusions as may be necessary or as requested by any party.

## II. FINDINGS OF FACT

The facts, either as stipulated to or admitted by counsel of record, or as adduced from the introduction of exhibits, are as follows:

1. On October 14, 2005, Diane McBride (the Debtor) filed a Chapter 7 Voluntary Petition. [Docket No. 1.][2]

2. In her Schedule B, the Debtor listed her ExxonMobil Savings Plan (the Savings Plan) as an asset. [Docket No. 1, Schedule B.] Specifically, the Debtor set forth that the value of the Savings Plan was $336,914.93. *Id.*

3. In her Schedule C, the Debtor claimed the entire Savings Plan as exempt. [Docket No. 1, Schedule C.]

4. On December 29, 2005, the Trustee filed the Trustee's Objection to Exemptions, objecting to the Debtor's exemption of after-tax contributions to the Savings Plan in the amount of $4,840.00. [Docket No. 9.]

5. On February 21, 2006, a hearing was held on the Trustee's Objection to Exemptions.

6. On March 3, 2006, the Trustee filed the Trustee's Brief Regarding Objection to Exemptions. [Docket No. 14.]

7. On March 6, 2006, the Debtor filed her Memorandum Regarding After Tax Contributions to 401(k). [Docket No. 15.]

---

[2] In these Findings of Fact and Conclusions of Law, all references to Docket Numbers relate to the Docket Sheet in Case Number 05-91224 unless otherwise noted.

2

8. On March 10, 2006, the Trustee filed the Supplement to Trustee's Brief Regarding Objection to Exemptions. [Docket No. 16.]

9. On July 26, 2006, this Court held another hearing on the Trustee's Objection to Exemptions. At this hearing, the Debtor's counsel produced a copy of the Savings Plan. [July 26, 2006 Hearing.]

10. The Savings Plan is an "ERISA-qualified" plan containing an anti-alienation provision as required by 29 U.S.C. § 1056(d)(1). [Savings Plan, page 54 ¶ 2.]

### III. CONCLUSIONS OF LAW

#### A. Jurisdiction and Venue

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334 (a) and 157. This contested matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B). Venue is proper pursuant to 28 U.S.C. § 1408(1).

#### B. Summary of Parties' Arguments

The Debtor claimed her Savings Plan as exempt property pursuant to § 42.0021 of the Texas Property Code. [Docket No. 1, Schedule C.] The Trustee objected to the Debtor's exemption of after-tax contributions to the Savings Plan in the amount of $4,840.00. [Docket No. 9.] Specifically, the Trustee objected to exemption of after-tax contributions based on the following grounds: (1) the Savings Plan is not exempt from the bankruptcy estate because it does not constitute a "spendthrift trust" under Texas state law; (2) the Savings Plan does not constitute a "spendthrift trust" under Texas state law because the Debtor may borrow from the Savings Plan; (3) § 42.0021 is not preempted and therefore cannot operate to exempt an ERISA plan; (4) no case law exists holding

3

that after-tax contributions to an otherwise qualified plan are exempt; (5) after-tax contributions to IRAs are not exempt under § 42.0021, and after-tax contributions to ERISA plans should be treated similarly; (6) pursuant to § 42.0021, contributions to retirement plans in excess of the authorized amount are not exempt from execution; and (7) the Savings Plan is not exempt because it is not tax-qualified. [Docket Nos. 9, 14, 16.]

The Debtor responded to the Trustee's objection by contending that the after-tax contributions to the Savings Plan are exempt from the bankruptcy estate. [Docket No. 15.] The Debtor asserted that: (1) the Savings Plan, including the $4,840.00 in after-tax contributions, is entirely exempt from the bankruptcy estate under § 42.0021; (2) the Savings Plan is ERISA-qualified; (3) the Debtor's contributions, including the after-tax contributions, are within the maximum contribution limits of the Savings Plan; and (4) the recent amendments to § 522 demonstrate congressional intent to exempt retirement plan funds from the bankruptcy estate. [Docket No. 15.]

### C. "Excluded" Property v. "Exempt" Property

Before addressing the parties' contentions as to whether the Debtor's after-tax contributions to the Savings Plan are exempt, this Court first notes the distinction between property that is "excluded" and property that is "exempted" from the bankruptcy estate. "Excluded" property refers to property that never comes into the bankruptcy estate. *In re Miller*, 224 B.R. 913, 917 n.2 (Bankr. D.N.D. 1998). However, "exempted" property becomes part of the bankruptcy estate at the time a debtor files a bankruptcy petition, and then is taken out of the estate when reclaimed by the debtor. *Id.* Section 541(b) of the Bankruptcy Code sets forth types of property that are altogether excluded from the bankruptcy estate, while § 522 governs exempt property. *Id.* The court in *In re Miller*

4

explained the differences between "excluded" and "exempted" property and the reasons that these terms are often confused:

> It is critical that the distinction between "excluded" and "exempted" property be understood here, for the terms "exclude" and "exempt," as they relate to property in the context of the bankruptcy estate, are not interchangeable. Distinguishing between the two concepts, the Court of Appeals for the Seventh Circuit explained, in *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993), that "[a] debtor's interest in property may either be excluded from the estate under 11 U.S.C. § 541 or exempted under § 522." Property which *is excluded* from the bankruptcy estate never becomes property of the bankruptcy estate; it is neither property of the estate at the inception of the bankruptcy case, nor at any later moment therein. Property which *may be exempted* from the bankruptcy estate becomes so *only after first having been property of the estate*. Although once a part of the bankruptcy estate, it is subsequently removed therefrom by resort to exemptions afforded by applicable state or federal law. A possible source for the confusion which sometimes manifests itself in this area is revealed, and well-explained, by the bankruptcy court in *In re Stevens*, 177 B.R. 619 (Bankr. E.D. Ark. 1995), as follows: "It is possible that some of the . . . confusion arises from the fact that the debtors claim the property as exempt despite the fact that it is not property of the estate. This procedure is due, in part, to a lack of clarity on the part of the petition forms since <u>there is . . . [no] specific schedule in which to list assets not property of the estate</u>, other than the schedule in which the debtors list exempt property." *Id.* at 620 n.2; *see In re Cathcart*, 203 B.R. 599, 601 n.1 (Bankr. E.D. Va. 1996).

*Id.* (emphasis added).[3] Although the parties in this case dispute whether the Debtor's after-tax contributions to her Saving Plan are exempt from the bankruptcy estate, this Court understands the issue to be whether the Debtor's after-tax contributions constitute property of the bankruptcy estate.

### D. The ERISA-Qualified Savings Plan in this Case is Excluded

An ERISA-qualified savings plan is excluded from a debtor's bankruptcy estate. *Patterson v. Shumate*, 504 U.S. 753, 112 S. Ct. 2242, 119 L. Ed. 2d 519 (1992). Section 541 of the Bankruptcy

---

[3] The *In re Stevens* opinion contains a typographical error and reads: ". . . there is specific schedule in which to list assets not property of the estate . . . ." The *In re Miller* decision quotes *In re Stevens* and addresses the error by inserting the word "a" to read: "there is [a] specific schedule in which to list assets not property of the estate . . . ." However, although Schedule C exists on which to list property that a debtor claims as *exempt* from the bankruptcy estate, there is no Schedule on which to list property that is *excluded* from the bankruptcy estate. Therefore, this Court amends the quotation to state: "<u>there is . . . [no] specific schedule in which to list assets not property of the estate</u> . . . ."

Code sets forth what is and is not property of the bankruptcy estate. Section 541(c)(2) specifically provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." This language means that if a debtor could not assign property to a creditor outside of bankruptcy, then the debtor cannot assign the property to a creditor in bankruptcy. Anthony Michael Sabino, Esq. and John P. Clarke, *The Last Line of Defense: The New Test for Protecting Retirement Plans from Creditors in Bankruptcy Cases*, 48 ALA. L. REV. 613, 620 (1997) (citing 11 U.S.C. § 541(c)(2)). 29 U.S.C. § 1056(d)(1) states "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." This section constitutes "applicable nonbankruptcy law" as referred to in § 541(c)(2). *Patterson v. Shumate*, 504 U.S. 753. Therefore, an ERISA-qualified plan that contains an anti-alienation provision pursuant to 29 U.S.C. § 1056(d)(1) is excluded from the bankruptcy estate under § 541 of the Bankruptcy Code. *Id.*

In the instant case, the Savings Plan includes the following clause:

■ **Assignment of Benefits**

You cannot use your Savings Plan as collateral for a loan other than a loan from the Savings Plan. In addition, <u>your account cannot be pledged to another person or organization in any way except as provided by a Qualified Domestic Relations Order</u> ("QDRO"). A QDRO is a court order based on state domestic relations laws for child support, alimony payments or marital property rights that may provide for payment of a portion of your benefit to another person. . . .

[Savings Plan, page 54 ¶ 2 (emphasis added).] This Court finds that this section constitutes an anti-alienation provision in compliance with 29 U.S.C. § 1056(d)(1). Because the Savings Plan contains an anti-alienation provision in accordance with 29 U.S.C. § 1056(d)(1), it is excluded from this Chapter 7 bankruptcy estate under § 541 of the Bankruptcy Code.

The Trustee argues that ERISA does not exclude savings plans from the bankruptcy estate unless the savings plan is a "spendthrift trust" under Texas state law. [Docket No. 14 ¶ 4]. The Trustee relies on *In re Dyke* to support this contention. *In re Dyke*, 943 F.2d 1435, 1443 (5th Cir. 1991); [Docket No. 14 ¶ 4]. However, the Fifth Circuit's holding in *In re Dyke* has been abrogated by the United States Supreme Court. *Patterson v. Shumate*, 504 U.S. at 757 n.1 (acknowledging a conflict among the circuits and overturning *Dyke*).

### E. After-Tax Contributions to an ERISA-Qualified Savings Plan Are Excluded

*Patterson v. Shumate* dealt with pre-tax contributions to an ERISA-qualified savings plan. Whether after-tax contributions to an ERISA-qualified savings plan are excluded from the bankruptcy estate is an issue of first impression within the Fifth Circuit.

At the February 21, 2006 hearing, the Court asked the Trustee why after-tax contributions should be treated differently than pre-tax contributions. The Trustee responded "When you look at the Texas exemptions, . . . the contributions that qualify under the IRS Code are the ones that are tax deferred. What concerns me is if these after-tax contributions are not tax deferred under the Texas exemptions, then are they exempt at all? I will tell you that my rule of thumb has always been that if the debtor cannot gain access to those funds, then it is an exempt plan and I can't touch it. . . ." [February 21, 2006 Hearing.]

The Court construes this statement, as well as arguments made at the hearing and in the Supplement to Trustee's Brief Regarding Objection to Exemptions [Docket No. 16 ¶¶ 3, 4], as an objection that the Debtor's after-tax contributions should be deemed property of the bankruptcy estate because (1) the Debtor has access to and control over the after-tax contributions; and (2) the after-tax contributions are not tax-qualified. [Docket No. 16; February 21, 2006 Hearing.] The

Trustee provides no case law regarding whether after-tax contributions to an ERISA-qualified savings plan are property of the estate. [Docket No. 14 ¶ 7.] In his Supplement to Trustee's Brief Regarding Objection to Exemptions, the Trustee cites an article to support the proposition that after-tax contributions to retirement plans are not exempt property. [Docket No. 16 ¶ 1 (citing Spencer W. Creed & Bobbie G. Bayless, *Fraudulent Transfers in Texas*, 39 HOUSTON LAWYER 28, 32 (2001).] However, while this article states that contributions in excess of the maximum limit imposed by a savings plan and contributions to unqualified savings plans are not exempt, the article does not discuss after-tax contributions to ERISA-qualified savings plans. Bayless at 32 (citing TEX. PROP. CODE ANN. § 42.0021).

The Debtor contends that the after-tax contributions to her Savings Plan are not property of the bankruptcy estate and cites *Nelson v. Ramette (In re Nelson)*, 274 B.R. 789 (B.A.P. 8th Cir. 2002), *aff'd*, 322 F.3d 541 (8th Cir. 2003). [Docket No. 15.] *In re Nelson* differs from the case at hand because the debtor in that case acquired his interest in a savings plan through a domestic relations order; however, the opinion is instructive because it reviews several authorities interpreting *Patterson v. Shumate* and discusses congressional intent to encourage savings and to protect retirement funds. *In re Nelson*, 274 B.R. 789.

In a case squarely on point, the Ninth Circuit has held that after-tax contributions are excluded from the bankruptcy estate. *Barkley v. Conner (In re Conner)*, 73 F.3d 258 (9th Cir. 1996). In *In re Conner*, the debtors sought to exempt their ERISA-qualified savings plan. *Id.* at 259. The trustee objected to the exemption of after-tax contributions to which the debtors had unfettered access and could withdraw at will. *Id.* The trustee "argue[d] that because Congress intended for traditional trust law principles to apply, [the court] should hold that funds cannot be placed in trust,

8

beyond the reach of creditors, while remaining within the control of the debtor." *Id*. The Ninth Circuit disagreed and held that:

> [U]nder *Shumate*, ERISA plans are exempted from the bankruptcy estate, even though ERISA only requires restraints on alienation to third parties. In interpreting the § 541(c)(2) exemption to cover ERISA plans, the Supreme Court appears to have discounted any distinctions based on the debtors' control of their assets. Thus, the [trustee's] argument that we should conduct a functional analysis focusing on the debtors' control of the assets in the ERISA Plan has been rejected by the Supreme Court.

*Id* at 260.

Several other courts have examined the issues of whether savings plan funds to which a debtor has access and control are property of the bankruptcy estate and whether a savings plan must be tax qualified to be excluded from the bankruptcy estate. The Tenth Circuit decided that under *Patterson v. Shumate* and § 541(c)(2), the debtor's savings plan was excluded from the bankruptcy estate even though the debtor had the power to withdraw the funds from the savings plan. *Rupp v. Kunz (In re Kunz)*, 309 B.R. 795 (B.A.P. 10th Cir. 2004), *aff'd*, 124 F. App'x 597 (10th Cir. 2005).

Similarly, the Eleventh Circuit held that *Patterson v. Shumate* does not require courts to conduct an analysis of state spendthrift trust law by assessing whether the debtor can access and withdraw savings plan funds; rather, courts must only consider whether a savings plan contains an anti-alienation provision. *Meehan v. Wallace (In re Meehan)*, 102 F.3d 1209 (11th Cir. 1997). The Eleventh Circuit analyzed *Patterson v. Shumate* as well as its underlying decisions and explained as follows:

> The Fourth Circuit stated that the district court's "focus on state spendthrift trust law, which looks to the reality behind the non-alienation provision, is misplaced." . . . The Fourth Circuit explained that because "ERISA requires a plan to have a non-alienation provision, . . . no more inquiry need be made to determine whether the

9

trust is controlled by the settlor or the beneficiary, or whether they are the same person."

*Meehan*, 102 F.3d at 1213 (quoting *Shumate v. Patterson*, 943 F.2d 362, 364 (4th Cir. 1991)). The Eleventh Circuit determined that analyzing state spendthrift trust law is not proper and that even where a debtor has significant control and access to assets in a savings plan, the savings plan may be excluded from the bankruptcy estate if the savings plan is nonalienable. *Id.* at 1213-14.

In addition, a district court in Iowa decided that despite the debtor's access to and control over savings plan funds, the funds were not property of the bankruptcy estate. *Mfrs. Bank & Trust Co. v. Holst*, 197 B.R. 856 (N.D. Iowa 1996). In *Holst*, the appellant argued that to be excluded from the bankruptcy estate, a savings plan must be ERISA-qualified and constitute a spendthrift trust pursuant to state law. *Id.* at 857. The appellant further argued that the savings plan did not constitute a spendthrift trust under state law because the debtor had access to the funds. *Id.* Following *Patterson v. Shumate* and its progeny, the court held that a savings plan must only be ERISA-qualified—that is, contain an anti-alienation provision—to be excluded from the bankruptcy estate. *Id.* at 858-60. The court decided that the savings plan in question was excluded because it was ERISA-qualified, even though the Debtor had access to the plan funds. *Id.* at 859-60.

Also following *Patterson v. Shumate*, the court in *In re Stevens*, 177 B.R. 619 (Bankr. E.D. Ark. 1995), granted summary judgment in favor of the debtors because it determined that the debtors' ERISA-qualified plan containing an anti-alienation provision was excluded from the bankruptcy estate as a matter of law.

In *In re Finney*, No. 91-20239-SCS, 1997 Bankr. LEXIS 476 (Bankr. E.D. Va. Feb. 25, 1997) (opinion not designated for publication), the court considered whether to award the trustee fees

relating to his objection to the debtor's exemption of the voluntary contributions to his savings plan. A creditor objected to the trustee's fee application on the grounds that the trustee should not be compensated for objecting to exemption of the debtor's savings plan contributions because *Patterson v. Shumate* had conclusively established that the trustee could not prevail on the objection. *Id.* at *54-55. The court interpreted *Patterson v. Shumate* and its progeny and concluded that:

> [A] survey of the law shows that the trustee's position, that a portion of the retirement monies of the debtor representing voluntary contributions was subject to turnover, has been universally rejected by all courts considering this contention after the holding in *Patterson v. Shumate*.

*Id.* at *65. However, the court in *In re Finney* approved the trustee's fees relating to the objection because: (1) at the time the trustee made and pursued the objection, case law interpreting *Patterson v. Shumate* was just beginning to develop; and (2) the court desired to promote good faith efforts of trustees to pursue progressive theories of recovery to maximize the bankruptcy estate. *Id.* at *65-67.

Further, the Seventh Circuit considered whether a debtor's savings plan was property of the bankruptcy estate when the debtor and his children had borrowed from the savings plan to fund their family business; "[t]he loans were not properly documented and exceeded permissible levels; the borrowers did not attempt to repay the loans; but at least disbursements did not exceed the borrowers' vested balances and did not compromise other participants' accounts." *In re Baker*, 114 F.3d 636, 637 (7th Cir. 1997), *amended by*, 114 F.3d 636 (7th Cir. 1997). The court decided that regardless of the debtor's violations of ERISA, the statute applied to the savings plan and the anti-alienation clause rendered the savings plan exempt. *In re Baker*, 114 F.3d at 640. The Seventh Circuit amended its decision by amending the second paragraph of the opinion to explain:

> [The bankruptcy judge] assumed that if [the debtor's] plan was "ERISA-qualified" ... then the balance of [the debtor's] account is outside the bankruptcy estate given

11

> § 541(c)(2) and *Patterson*. It is not clear to us that this is so. *Patterson* holds that ERISA counts as "applicable nonbankruptcy law," not that all the full balances in all ERISA-qualified plans are necessarily protected from creditors. . . . We do not read *Patterson* to say that money readily available to participants for current consumption necessarily is unavailable to repay debts. . . . But because the [creditor] does not argue, and the record does not suggest, that [the debtor] lawfully could have withdrawn any of the funds remaining in his account at the time the bankruptcy case began, we do not pursue the question.

*In re Baker*, 114 F.3d at 637.

The Fifth Circuit followed the Seventh Circuit's opinion in *In re Baker*. In the Fifth Circuit case, *Traina v. Sewell (In re Sewell)*, 180 F.3d 707 (5th Cir. 1999), the trustee argued that the debtor's saving plan funds should not be excluded from the bankruptcy estate because the plan was not tax qualified. The Fifth Circuit found that ERISA applies to a savings plan regardless of whether the savings plan is tax qualified. *Id.* at 711. In evaluating whether a savings plan must be tax qualified to be ERISA-qualified and therefore excluded property under *Patterson v. Shumate*, the Fifth Circuit adopted the Seventh Circuit's interpretation of "ERISA-qualified" as meaning "containing the anti-alienation clause required by § 206(d)(1) of ERISA," and not tax qualified. *Id.* at 712 (quoting *In re Baker*, 114 F.3d at 638). Accordingly, the Fifth Circuit resolved that whether a savings plan is tax qualified does not affect the savings plan's status as excluded property; instead, whether a savings plan is excluded turns on the inclusion of an ERISA qualified anti-alienation clause. *Id.* at 712-13. Thus, in *In re Sewell*, because the debtor's savings plan included an ERISA qualified anti-alienation clause, the savings plan was excluded from the bankruptcy estate. *Id.* at 712.

Distinguishing *In re Sewell*, the court in *In re Goldschein*, 244 B.R. 595 (Bankr. D. Md. 2000), held that a debtor's savings plan funds were neither excluded nor exempt from the bankruptcy

estate because the savings plan was administered in violation of the Internal Revenue Code. Specifically, designating a non-employee as a beneficiary and making improper loans was tantamount to using the savings plan as his "personal piggy bank" and therefore the funds were property of the bankruptcy estate. *Id.* at 601-02. In the case at hand, there is no evidence tending to show that the Debtor misused her Savings Plan like the debtor in *In re Goldschein*.

In *In re Handel*, 301 B.R. 421, 423 (Bankr. S.D.N.Y. 2003), the court found that the debtor had "exerted control over his interest in the savings and profit sharing plan in violation of the plan's terms and [ERISA] in a manner that would cause the plan, at least as it pertains to [the debtor], not to qualify for favorable tax treatment under section 401(a) of the Internal Revenue Code (IRC)." Despite the debtor's egregious conduct, the court determined that pursuant to 11 U.S.C. § 541(c)(2), the debtor's ERISA savings plan was not property of the bankruptcy estate. *Id.* at 423. Specifically, the court found that although the debtor violated the provisions of his savings plan and ERISA by exercising control over his interest in the plan, the plan contained an enforceable anti-alienation provision and thus was not property of the bankruptcy estate. *Id.* The court stated that although it might be inequitable to permit the debtor to retain savings plan funds after violating both the plan and the statute, there is no equitable exception to the rule that ERISA-qualified savings plans are excluded from property of the estate. *Id.*

In *In re Parks*, 255 B.R. 768, 769 (Bankr. D. Utah 2000), the debtor was terminated from her employment prior to filing for bankruptcy relief. According to the terms of the debtor's ERISA savings plan, upon termination the debtor gained access to her savings plan funds and could withdraw them at will without penalty. *Id.* The trustee objected to the debtor's exemption of the savings plan funds. *Id.* The court determined that whether the saving plan funds were property of

the bankruptcy estate did not depend on the debtor's access and control to the funds; rather, whether the funds were exempt was dependent on whether the savings plan's anti-alienation clause remained effective once the debtor was terminated. *Id.* at 771. Ultimately, the court found that the debtor's savings plan funds were not property of the bankruptcy estate. *Id.* at 772. In so finding, the court considered the inequitable result of preventing creditors from collecting the debtor's savings plan funds as follows:

> The Supreme Court considered whether it was appropriate to approve a generalized equitable exception to ERISA's prohibition on the alienation of pension benefits—either for employee malfeasance or for criminal misconduct. It concluded that such an exception must be made by Congress, even though "[u]nderstandably, there may be a natural distaste for the result . . . reach[ed]." If the Supreme Court could not find an exception to ERISA's anti-alienation provisions, and instead ruled that an embezzler could defeat a constructive trust placed on his pension benefits in favor of the union from which he embezzled, it is extremely unlikely that any exception would be found to deprive a debtor of pension benefits so that the funds may be used to pay creditors.

*Id.* at 772 (quoting *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 377, 110 S. Ct. 680, 688, 107 L. Ed. 2d 782, 795 (1990)).

Turning to the matter at hand, the Debtor's counsel in this case argued at the February hearing, "If the plan allows the contribution into the ERISA-qualified plan, Congress has got to have looked at it and says that that's okay, we want to encourage savings." [February 21, 2006 Hearing.] The purpose behind ERISA is to make certain that "if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he actually will receive it." *Patterson v. Shumate*, 504 U.S. 753 at 765 (quoting *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 375, 100 S. Ct. 1723, 1733, 64 L. Ed. 2d 354, 367 (1980)).

Based on the foregoing authority, this Court holds that the Debtor's after-tax contributions to her Savings Plan are excluded from the bankruptcy estate. The Savings Plan contains an anti-alienation clause as required by ERISA and is therefore excluded from the bankruptcy estate pursuant to § 541(c)(2) and *Patterson v. Shumate*. The Trustee has failed to establish that after-tax contributions should be treated differently than pre-tax contributions to an ERISA-qualified Savings Plan. Indeed, the sole case regarding after-tax contributions held that such funds are not property of the bankruptcy estate. *In re Conner*, 73 F.3d 259. The Trustee introduced no evidence that the Debtor has unrestricted access to the after-tax funds or that the Savings Plan is not tax qualified. Even if the Trustee could show that the Debtor has access to the after-tax dollars or that the Savings Plan is not tax qualified, the after-tax contributions to the Savings Plan would still be excluded from the bankruptcy estate. For all of these reasons, this Court concludes that the Debtor's after-tax contributions to her ERISA-qualified Savings Plan are excluded from the bankruptcy estate because of the presence of the anti-alienation clause.[4]

### F. Are After-Tax Contributions to an ERISA-Qualified Savings Plan Exempt?

Because this Court has determined that the Savings Plan, including after-tax contributions, is excluded from the bankruptcy estate, the Court does not consider whether after-tax contributions to the Savings Plan constitute exempt property. *See In re Sewell*, 180 F.3d at 710 (explaining that "[a]s the Debtor in the instant case has claimed—and the bankruptcy and district courts have allowed—the *exclusion* of her beneficial interest in the Plan from her bankruptcy estate, we never

---

[4] The Court is mindful of the Fifth Circuit's warning that not "every beneficial interest of every participant in every ERISA retirement plan and trust that purports to restrict transfer" is excluded from the bankruptcy estate. *In re Sewell*, 180 F.3d at 713 n.21 (5th Cir. 1999). Under the facts in the case at bar, however, this Court believes that the Fifth Circuit's caveat is inapplicable.

reach the issue of *exemptions*: Exemptions come into play only when property is included in the bankruptcy estate and is sought to be used to satisfy the claims of creditors; by definition, *excluded* property never forms part of the bankruptcy estate and thus need not be tested for exempt status."); *In re Miller*, 224 B.R. at 917 (declining to decide whether savings plans were exempt after holding that the plans were excluded from the bankruptcy estate) (citing *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993) (explaining that property must be within the bankruptcy estate before a debtor may claim it as exempt)); *Spirtos v. Moreno (In re Spirtos)*, 992 F.2d 1004, 1007 (9th Cir. 1993) (holding that bankruptcy courts should not evaluate whether property is exempt if the property in question is not part of the bankruptcy estate); *Butler v. Becton, Dickinson & Co. (In re Loomer)*, 198 B.R. 755, 759 (Bankr. D. Neb. 1996) (declining to consider the exemption issue because the debtor's savings plan was excluded from the bankruptcy estate and the exemption issue was therefore irrelevant)); *but see Corzin v. Larson (In re Larson)*, 340 B.R. 852, 856 (Bankr. N.D. Ohio 2006) (stating that the court may consider whether property is exempt from the bankruptcy estate before deciding whether it is excluded).

Having determined that the Debtor's after-tax contributions to the Savings Plan are excluded from the bankruptcy estate, this Court does not reach the issues of whether the Savings Plan constitutes a spendthrift trust under Texas state law and whether after-tax contributions are exempt pursuant to § 42.0021 of the Texas Property Code. It would be illogical to consider whether property that never enters the bankruptcy estate may be taken out of the estate.

## IV. CONCLUSION

This Court holds that the Debtor's after-tax contributions to her ERISA-qualified Savings Plan are excluded from the bankruptcy estate. Accordingly, this Court overrules the Trustee's Objection to Exemptions. An Order Overruling the Trustee's Objection to Exemptions will be entered on the docket simultaneously with these Findings of Fact and Conclusions of Law.

SIGNED on this the 7th day of August, 2006.

Jeff Bohm
United States Bankruptcy Judge


cc: Weston Cotten
*via facsimile* (281) 421-1103

Rodney Tow
*via facsimile* (281) 681-1441